IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

BERTRAM HARRISON,

    Petitioner,

v.

WARDEN SPROUL,

    Respondent.

Case No. 3:20-cv-00425-NJR

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 filed by Petitioner Bertram Harrison ("Harrison"). (Doc. 1). Harrison, a former inmate at the United States Penitentiary in Marion, Illinois ("USP Marion"), located within the Southern District of Illinois, challenges the loss of 41 days of good conduct time. (Doc. 1; Doc. 17-1, p.2).[1] Harrison sets forth one ground for relief arguing that the evidence relied upon at the disciplinary hearing was insufficient to support the finding of his guilt. (Doc. 1, p. 6). Respondent filed a response to the petition. (Doc. 17). For the reasons set forth below, the petition is denied.

## BACKGROUND

Harrison is serving a 156-month sentence imposed in the Northern District of Florida. (Doc. 17, p. 1). The incident at issue in this action took place at USP Marion on August 9, 2019.

---

[1] Harrison has since been transferred to FCI Petersburg in Hopewell, Virginia, and has a current projected release date of March 14, 2024. *See* https://www.bop.gov/inmateloc/ (last visited Nov. 7, 2023). Harrison's transfer does not strip this Court of jurisdiction, however, because jurisdiction over a habeas corpus petition is determined when the petition is filed. *Gamboa v. Daniels*, 26 F.4th 410, 414 (7th Cir. 2022); *Moore v. Olson*, 368 F.3d 757, 758 (7th Cir. 2004) (prisoner transferred while § 2241 is pending need not refile in new district).

(Doc. 1, pp. 14-15). Harrison's prison cell, DO4-003L, was randomly searched by Bureau of Prisons Officer Christina Dunnigan. (Doc. 18, p. 5). Officer Dunnigan found a "knitted hobby craft item" on the top of Harrison's locker that contained a handwritten letter. (*Id.*). The letter contained instructions on how to introduce the drug "K2" into the prison. (*Id.* at pp. 5, 10-12). These instructions explained where to buy liquid K2, how to effectively spray it on the paper being sent to the prison, and how to send the paper into the prison. (*Id.*). It also detailed a coded system for communicating about the drugs and identifying inmate register numbers. (*Id.*). An alternative method for sending the K2 through a store was also detailed. (*Id.*). The letter indicated that the sender would receive money for their assistance (*Id.*). Officer Dunnigan detailed all of this in the Incident Report she wrote charging Harrison with Attempted Introduction of Narcotics on that same day. (*Id.* at pp. 5-7).

The following day, on August 10, 2019, Harrison was provided with an advance written notice of the charge against him. (*Id.* at pp. 1, 5). The Unit Discipline Committee (UDC) held a hearing on August 14, 2019, where Harrison was advised of his rights. (*Id.* at 8-9). The UDC referred the matter to a Discipline Hearing Officer ("DHO"). At both the UDC hearing and the DHO hearing, Harrison waived his rights to a staff representative and to present witnesses. (*Id.* at 8; Doc. 1, p. 14). At the DHO hearing on September 12, 2019, Harrison denied the charge and stated "[t]he handwritten letter is not mine. It could have been put there by anybody. I do not know how it got on my locker." (Doc. 1, p. 14). He did not submit any documentary evidence in support of this statement. (*Id.* at p. 16). Relying upon specific evidence in the form of the written statement of the reporting officer, the photo sheets of the letter found on Harrison's locker, the fact that Harrison was the sole occupant

of the cell, and the lack of evidence indicating that another inmate set Harrison up, the DHO found Harrison guilty of violating Code 111A. (*Id.* at pp. 15-16).

Harrison filed a Regional Administrative Remedy Appeal. (Doc. 18-1, pp. 9, 11). In his appeal, Harrison argued that he was made to believe the letter had been found inside of his locker, not on top of his locker, and that the failure to disclose prevented Harrison from preparing an adequate defense. (*Id.*). Harrison stated that if he had known where the evidence was found he would not have waived his right to a staff representative who could assist with providing witnesses and reviewing evidence. (*Id.* at p. 11). Harrison also argued that the top of his locker was a common area so he could not be held responsible for property found there without a proper investigation. (*Id.*). Finally, Harrison argued that Code 111A does not cover the type of violation alleged because no drugs were introduced or manufactured. (*Id.*) The Regional Director rejected this appeal for three reasons. First, based on both the incident report and Harrison's own statement at the DHO hearing, it was concluded that Harrison was aware that the letter was found on top of his locker. (*Id.* at p. 9). Second, the Regional Director reiterated that inmates are responsible for keeping their cell and personal property areas, which include the top of lockers, free from contraband. (*Id.*). Finally, relying on the Inmate Discipline Program, the Regional Director stated that possessing a letter outlining how to introduce drugs into a facility qualifies as a violation of Code 111A. (*Id.*).

Harrison then filed a Central Office Administrative Appeal. (*Id.* at pp. 1-4). In this appeal, he argued that the DHO found him guilty without a proper investigation in violation of his due process rights. (*Id.* at 2-3). This appeal was denied because the Central Office found that the disciplinary proceedings were in accordance with Program Statement 5270.09,

Inmate Discipline Program, because the DHO's decision was reasonable and based upon sufficient evidence as detailed in the DHO report. (*Id.* at p. 1).

Harrison now brings this habeas corpus petition, challenging the sufficiency of the evidence introduced in the DHO hearing. (Doc. 1, pp. 1-13). Harrison alleges that the evidence was insufficient because his locker was situated against cell bars, "only inches" from passers-by where as many as 69 other inmates had access to the locker. (*Id.* at p. 11- 12). He also argues that the incident report relied upon in the DHO hearing is insufficient evidence for a theory of constructive possession. (*Id.* at 12).

## LEGAL STANDARD

Federal inmates must be afforded due process before their good time credit can be revoked. *Jones v. Cross*, 637 F.3d 841, 845 (7th Cir. 2011). Thus, inmates can challenge the loss of good time credit through a petition for habeas relief pursuant to 28 U.S.C. § 2241. *Id.* at 842. In a disciplinary hearing, due process requires that the prisoner be given: (1) advance written notice of the claimed violation; (2) the opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence; and (4) a written statement detailing the evidence relied on and the reasons for the disciplinary action. *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007); *see also Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1977).

Due process also requires that the findings of the DHO be supported by "some evidence" in the record. *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). The "some evidence" standard is a low bar, less exacting even than the preponderance of the evidence standard, requiring only that the decision not be completely without support in the record. *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). In reviewing a decision for "some evidence,"

courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh evidence. *Id.* The relevant question is only whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000). The Court can only overturn the decision "if no reasonable adjudicator could have found [petitioner] guilty of the offense on the basis of the evidence presented." *Henderson v. U.S. Parole Commission*, 13 F.3d 1073, 1077 (7th Cir. 1994).

## DISCUSSION

Harrison argues that the DHO's decision following the hearing relied upon insufficient and unreliable evidence, thus resulting in a finding that was not appropriately supported by "some evidence." (Doc. 1, pp. 10-13). Respondent argues that Harrison's arguments cannot be considered because he did not raise them at the DHO hearing, thereby waiving the arguments. (Doc. 17, pp. 5-6). The Court agrees. Despite having access to the incident report and being informed of his right to staff representation and witnesses, Harrison did not present any evidence to the DHO relating to the setup of the locker within his cell or indicating that numerous inmates had access to his locker. (Doc. 1, p. pp. 14-17). Harrison, instead, only argued that "[t]he handwritten letter is not mine. It could have been put there by anybody. I do not know how it got on my locker." (*Id.* at p. 14).

Harrison also did not call any witnesses or present any documentary evidence that would support his argument at the time of the hearing. (*Id.* at pp. 14-17). In this petition, Harrison alleges that numerous other inmates had access to the locker and could have placed the letter on it. (Doc. 1, p. 12). Due process, however, "does not include a right to submit additional evidence on administrative appeal from a hearing officer's decision." *Bivins v.*

*Williams*, No. 22-1791, 22023 WL 180051, at *1 (7th Cir. Jan. 13. 2023); *McPherson,* 188 F.3d at 786-87. Harrison was given the opportunity to present this evidence at the time of the DHO hearing but failed to do so. Thus, Harrison has waived his right to raise these claims now.

Even if Harrison's claims could be considered, they have no merit. Due process, in a prison disciplinary proceeding, only requires "that there be some evidence to support the findings made in the disciplinary hearing." *Hill*, 472 U.S. at 457. The relevant question under this standard is "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 456-57. The Court cannot "assess the comparative weight of the evidence underlying the disciplinary board's decision." *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000). The "some evidence" standard is satisfied if "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Hill*, 472 U.S. at 457.

Harrison asserts that the DHO did not have sufficient evidence to find him guilty because the reporting officer failed to describe the cell, the locker, or the accessibility of the locker. (Doc. 1, p. 11). He also asserts that the DHO's findings based on the incident report and the letter found on the locker are unreliable because this evidence indicates a theory of "constructive possession" which can only qualify as "some evidence" where only a few inmates have access to the locker as opposed to the 69 inmates Harrison argues had access to his locker. (*Id.* at p. 12).

Harrison's claim fails because there was "some evidence" to support the DHO's finding of guilt. The record indicates that the DHO relied upon the written statement of the reporting officer, the photo images of the letter found on the locker, the fact that Harrison was the sole occupant of the cell, the fact that it was Harrison's responsibility to keep the area

free from contraband, and the fact that no evidence was presented indicating that another inmate set Harrison up. (*Id.* at p. 15-16). The DHO then weighed the evidence and concluded that Harrison had violated Code 111A. (*Id.* at p. 16). Thus, the evidence relied upon meets the "some evidence" standard required to satisfy due process.

Similarly, Harrison's argument that the evidence was unreliable because it indicates a theory of constructive possession also fails. The case that Harrison cites to in support of the idea that a theory of constructive possession must fail where numerous inmates have access to the area at issue also reiterates that the Court only decides whether are not there was "*any* evidence in the record that could support the conclusion" that was reached. *Hamilton v. O'Leary*, 976 F.2d 341, 346 (7th Cir. 1992) (citation omitted). Therefore, only evidence that was *actually* presented to the DHO is relevant to the Court's analysis. *Id*.

While Harrison now argues that 69 other inmates had access to the locker where the letter was found, he does not allege that this fact was presented to the DHO at the hearing. In fact, based on the facts set forth in the record, the evidence before the DHO was solely the reporting officer's report, the letter itself, and Harrison's limited testimony. (Doc. 1, pp. 14-17). The Court cannot consider anything beyond that which was presented at the DHO hearing. Therefore, the access of the 69 inmates to the locker is irrelevant and so is their impact on the alleged theory of constructive possession as argued by Harrison.

Harrison's due process rights were not violated. He was properly given the opportunity to call witnesses and present documentary evidence in his defense. Instead of introducing any evidence to his defense, Harrison chose simply to state that the letter was

not his. *Id*. The evidence relied upon by the DHO is sufficient to satisfy the "some evidence" standard. Accordingly, Harrison's petition must be denied.[2]

## CONCLUSION

For these reasons, the Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 filed by Petitioner Bertram Harrison (Doc. 1) is **DENIED.** This action is **DISMISSED with prejudice**, and the Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

DATED: November 7, 2023

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

---

[2] Harrison also argues that Officer Dunnigan wrote the wrong cell number on the investigation report. (Doc. 1, p. 13). Respondent argues that that this discrepancy is the result of Harrison and the DHO reading Officer Dunnigan's handwriting of a lowercase "L" incorrectly. (Doc. 17, p.8). This resulted in the DHO report referring to Cell DO4 -0031 as opposed to Cell DO4-003L. (Doc. 1, p. 13, 15; Doc. 17, p. 8). Either way, this administrative error makes no difference in this case because Harrison has never challenged that the letter was found in his cell.